UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES,

    Plaintiff,

    v.                                                            NO. 19-MJ-06086-MPK

ERIC TRAN THAI,

    Defendant

### ORDER ON GOVERNMENT'S MOTION FOR DETENTION

KELLEY, U.S.M.J.

    I.      <u>Introduction</u>.

The complaint charges Eric Tran Thai with violating 18 U.S.C. § 2251 (a) and (e), sexual exploitation of children and attempt, on or about May 2, May 3, September 15, September 29, and November 6, 2017. (#4.) The crimes carry fifteen-year minimum mandatory penalties. 18 U.S.C. § 2251 (e). The affidavit to the complaint, signed by FBI Special Agent Eric S. Slaton, states that Thai came to the attention of authorities on February 6 and February 27, 2017, when two Boston College students reported to the police that they had been videotaped without their consent while using men's restrooms on the Boston College campus. (#4-1 at 2.) After the February 27, 2018, report, Thai was discovered in a bathroom stall with a tablet computer and a cell phone. *Id*.

According to the complaint, after Thai was administered his *Miranda* rights, he admitted to the police that he had taken pictures of a man in the bathroom without the man's knowledge, and said he had been engaging in such activity for "about a year." *Id*. He said other images could be found on an electronic device in his home. *Id*. The police searched the bag Thai had with him and found "several covert camera devices" (including "faux smoke detectors, a water bottle containing a

1

small cube recording device and a pair of sunglasses outfitted with a built-in camera") and several SD cards. *Id.*

A search warrant was obtained out of the Newton District Court for Thai's Dorchester, Massachusetts residence. *Id.* When the police searched Thai's home pursuant to the warrant, they found approximately 150 items of evidence, including approximately 26 computer hard drives, 20 thumb drives, 27 "covert and regular cameras," 14 computers, iPads, cell phones, and multiple SD and SIM cards. *Id.* at 3. Technicians have determined that the devices contain about 20 terabytes of data, dating back twenty years. *Id.*[1] The forensic analysis is still ongoing on the enormous amount of data seized. *Id.*

One hard drive contained folders listing several schools and other public places, including malls, airports, and foreign countries. *Id.* Thai can be seen in some of the videos. *Id.* One folder, labeled "Boston Latin High School," included approximately 45 surreptitiously-recorded videos of young men in a bathroom at the school in various states of undress, created over a period of about ten dates between February and December 2017. *Id.* at 4. The government has ascertained that the four young men seen on the videos charged in the instant case were minors. *Id.* at 5-6.

Thai was indicted by a Middlesex County grand jury in November 2018 in connection with the offenses committed at Boston College and was arraigned on those charges on January 22, 2019. *Id.* at 4.

---

[1] The affidavit states that a terabyte is equal to approximately one trillion bytes. The books in the Library of Congress contain approximately 20 terabytes of text, and a one-terabyte drive could hold 1,000 hours of video. *Id.* at 3 n.3.

II.      <u>Personal Information</u>.

Thai is 36 years old. He has lived in Boston his entire life and has lived at the same address for the past ten years, where he lived by himself at the time of the initial appearance in this matter. He reported significant international travel to probation during his pretrial services interview, including trips to Asia, Africa, Europe, and the Middle East. He has never been married and has no children. His parents live in Quincy, Massachusetts, and he also has a brother who lives in the Boston area. At the time of the detention hearing, he was working for Amazon up to eight hours per week, earning $15 per hour. He told probation he was living on his savings. He has no substance use issues. The only matter on his criminal record are the pending charges out of Middlesex Superior Court for secretly photographing adults.

III.     <u>The March 11, 2019 initial appearance and detention hearing</u>.

Thai's initial appearance and detention hearing were held before this court on March 11, 2019.[2] Probation had interviewed Thai prior to the hearing, and recommended release on conditions in its written report. At the hearing, the government stated that it was moving for detention under dangerousness and risk of flight, but agreed with probation that there were conditions that could ameliorate those risks.[3] The government asked for "home detention" with electronic location monitoring, and asked that if Thai was allowed to leave his residence for activities such as work,

---

[2] The court listened to the tapes of the hearings in the case before writing this order.

[3] The government did not specify under what part of the bail statute it was moving for detention, but the court notes that one section of the bail statute that applies to this case - 18 U.S.C. § 3142 (e)(3)(E) (offense involves minor victim) - establishes a rebuttable presumption that no conditions will assure the appearance of the person or the safety of the community if the court finds probable cause to believe the person committed such an offense. Thai waived his right to a probable cause hearing at the initial appearance on March 1, 2019 and thus the rebuttable presumption applies here.

medical appointments, religious services or legal appointments, he be ordered to stay away from schools or any places that children were likely to be found. In addition, the government asked that Thai be prohibited from having any device the sole purpose of which was to make video recordings, and that he "register with probation" any devices in his possession that had an "ancillary" purpose of making video recordings.

Thai, through counsel, asked at the hearing that he be ordered to abide by a curfew, enforced by an ankle bracelet, rather than being on electronic location monitoring. According to defense counsel, more intensive monitoring was not necessary, as Thai had been "on law enforcement radar" since "this situation came to [the attention of law enforcement] over a year ago."

The government acknowledged that Thai had been on release from a state court case since March 2018, but asserted that the charges in state court were misdemeanors against adult victims, while here he is charged with felony offenses against children, so that the charged crimes are more serious, and the stakes much higher for Thai, in federal court. Finally, the government said that if the court did not order home detention as a condition of release, the government did not feel that the risks of danger and flight would be mitigated.

In setting conditions, the court noted that the crime charged was very serious, Thai posed a serious threat to the community, and that the evidence against him was very strong, but the court would adopt the recommendations of probation and the government regarding conditions. The court asked Thai's brother, who was present in the courtroom, to be his third-party custodian, and conducted a colloquy with his brother concerning the responsibilities of a third-party custodian. Thai's brother agreed to call him every day and to visit him periodically.

At the request of defense counsel, the court stated that Thai would be allowed to visit his parents, who live in Quincy and apparently have health problems, with the assent of probation. The

court released Thai on standard conditions, and in addition, imposed a $10,000 unsecured bond, ordered him to avoid direct or indirect contact with any witness or victim in the case, and ordered him to receive psychological treatment. The court ordered Thai to be on "home detention," which the court described as "location monitoring," and stated that he could only leave his home for approved activities relating to employment, education, religious services, medical treatment, substance abuse, mental health treatment, legal appointments, or other activities approved by probation, including family visits. In imposing this condition, the court understood that "location monitoring" was in fact GPS monitoring, and that the government would know where Thai was when he was not at home.

The court also imposed the condition that probation and the government had requested, that Thai not possess any device "the sole purpose of which" was video recording, and ordered that any other devices must be shown to probation and probation would decide if he could possess them. Finally, the court ordered that Thai could not have unsupervised contact with anyone under the age of eighteen and could not frequent places where children were found, such as schools and parks.

IV.   The March 15, 2019 Memorandum by Probation.

In many cases, prior to release of a defendant on conditions, the government and probation request that probation conduct a home visit. That request was not made in this case. Therefore, after the detention hearing on March 11, the court asked the probation officer assigned to supervise Thai for a report concerning the suitability of his home and also asked the officer to note any concerns about the conditions imposed by the court, especially with regard to the home detention ordered. The court wanted further information about Thai's schedule because at the detention hearing, the court was given very little information about Thai's counseling, other than being informed that he

5

was not undergoing individual counseling. In addition, the court had no idea what Thai's schedule outside the home would consist of.

The probation officer responded with a memorandum that was provided to counsel and filed on the docket under seal, because it contained detailed information concerning psychological treatment that Thai was receiving, among other personal information.

In the memorandum, the probation officer reported that Thai's proposed schedule resulted in his being away from his home for long stretches of time each day, and that the specific type of location monitoring that the court had ordered did not enable probation to know where he was when he was not home. The probation officer requested that the court at least impose GPS monitoring, but stated that even GPS monitoring "is unable to mitigate the risk to the community." The officer warned that while "GPS monitoring will provide information as to the defendant's whereabouts, it does not inform of his activities while in the community. GPS data is viewed daily by the Probation Office to confirm defendant's compliance with his approved schedule, but this review does not occur in real time."

The officer recommended that the court impose "home incarceration," which the officer described as "24-hour lockdown in the home," where a person is only permitted to leave home to attend court or meet with their attorney.

Finally, the officer recommended that given the nature of the charges and the risk to the public that the alleged conduct poses, Thai's employer should be notified of the charges.

V.     The Further Detention Hearing on March 19, 2019.

On March 19, the court held a further detention hearing to address the concerns raised by probation in the memorandum about Thai's conditions of release. At the outset of the hearing, the court informed the parties that the court was reopening the detention hearing because the court was

concerned about the efficacy of the conditions that had been put in place. The court informed the parties that the court had intended, at the original detention hearing, to impose GPS monitoring, and that the court was concerned that the location monitoring which had been imposed was insufficient to mitigate the danger to the community that Thai posed.

The government stated that it also had concerns about Thai's freedom of movement in the community, asked the court to impose GPS monitoring, and advocated for "severe restrictions" on his ability to leave his home. The government agreed that Thai's employer should be informed of the charges against him. The government stated that Thai was released from the Middlesex County case on "some bail conditions that were quite minimal," and that he was not known to have reoffended. Finally, in response to a direct question from the court concerning the sentence that Thai was facing, the government said that it would seek to have a fifteen-year minimum mandatory sentence imposed if Thai was convicted.[4]

Defense counsel objected to the modification of Thai's conditions of release, and argued that the conditions already imposed were sufficient to mitigate any risk of flight or danger to the community.

At the conclusion of the hearing, the court revoked Thai's release, stating that there were no conditions that could guarantee the appearance of Thai or the safety of the community.[5]

---

[4] The court understood at the original hearing that Thai was facing a fifteen-year minimum mandatory sentence, but had not asked the government whether in fact the government would seek to have such a lengthy sentence imposed.

[5] Although the court stated on the record that there were no conditions that could "guarantee" the safety of the community or Thai's return to court, the court is aware that the correct standard is whether conditions can reasonably mitigate the risk of flight or danger.

VI. <u>Legal Standard</u>.

Under the Bail Reform Act, a defendant may only be detained pending trial if the government establishes either by clear and convincing evidence that the person poses "a danger to the safety of any other person or the community if released," or by a preponderance of the evidence that the person poses a serious risk of flight. 18 U.S.C. § 3142(f); *United States v. Patriarca*, 948 F.2d 789, 791-793 (1st Cir. 1991). If there is some risk, the Court should consider whether a combination of release conditions "will serve as a reasonable guard." *Id.* at 791.

In determining whether suitable release conditions exist, the judicial officer must take into account the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, employment and other factors; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). Each of these factors must be weighed, and the decision on whether to release is an individualized one. *Patriarca*, 948 F.2d at 794.

The government bears the burden of persuasion to establish that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). Where, as here, a person is charged with a crime involving a minor victim, there is a rebuttable presumption that no conditions will assure the appearance of the person or the safety of the community. 18 U.S.C. § 3142 (e)(3)(E). The presumption imposes a burden of production on the defendant to come forward with "some evidence" to demonstrate that he is not a danger to the community or a flight risk. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on*

*other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). Without credible evidence to rebut the presumption, the presumption alone may justify detention. *United States v. Alatishe*, 768 F.2d 364, 371 (D.C.Cir. 1985). Notwithstanding this rebuttable presumption, the burden of persuasion always remains with the Government. *Jessup*, 757 F.2d at 381.

Once conditions of release are imposed, the judicial officer may "at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142 (c)(3). A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142 (f)(2)(B).

VII. <u>Analysis</u>.

At the first detention hearing in this case, the court felt that Thai's release was a very close question. Considering the factors set out in 18 U.S.C. § 3142 (g), the alleged crimes are extremely serious, and have undoubtedly caused great distress to the minor victims and their families, if not the entire community at the school. The charged acts demonstrate reckless, compulsive behavior on the part of Thai. Further, this was not a one-time episode, but was rather a repeated, deliberate, carefully-planned course of conduct.

With regard to risk of flight, the evidence against Thai is overwhelming, and he is facing, at a minimum, a fifteen-year sentence. Thai has traveled extensively abroad, and he has access to an amount of savings that could facilitate flight. He argues that he was on release for some time in connection with the state charges prior to being charged in this federal case, and did not attempt to flee. According to the government, however, the state charges are misdemeanors involving adults,

so the penalties he is facing are considerably greater in federal court. In his favor, he has parents and a brother in the Boston area, and has lived here all his life.[6] Thai's employment is minimal, however, as he apparently only works up to eight hours per week, and he is living on his savings.

Finally, the danger posed by Thai's release is substantial: given the nature of the charged conduct, Thai apparently is a risk-taker and has repeatedly engaged in serious criminal conduct consisting of surreptitious acts during which he easily could have been discovered. Further, the government stated that the supervision he was on as a result of the state court charges was "minimal," so the court questions whether one can be sure he was not reoffending while on release.

In spite of the many factors that militated against release, at the first hearing the court decided that there were conditions that could reasonably assure the safety of the community and risk of flight. In considering conditions of release at the urging of the defendant, and also on the recommendation of probation and the government, the court agreed with the government that it was imperative that Thai's movement in the community be restricted and his whereabouts be known to the government at all times, so as to reasonably mitigate the possibility of his reoffending.

The memorandum from the probation officer who conducted a home visit, provided to the court after Thai's release, alarmed the court. First, the court realized that the GPS monitoring that the court had meant to impose had not, in fact, been imposed. Second, the court learned that the hours that Thai required to be out of the home for psychological treatment were extensive. Coupled with other obligations such as work and legal appointments, Thai was requesting to be out of his home for very long stretches of time.

---

[6] Thai apparently owns the apartment in which he lives, but at the initial detention hearing, when the court inquired about whether Thai had any equity in the home, defense counsel responded that it was subsidized by the City of Boston and its value was uncertain.

GPS monitoring, which the court originally had intended to order, might have been a solution to this problem, but in the memorandum from probation, the court learned that even with GPS monitoring, the government still would not know where Thai was when he was away from home in real time, but rather would review his whereabouts daily. In the court's opinion, this is an insufficient control on his behavior to mitigate the danger he poses to the community.

Probation recommended home incarceration, so that Thai would be confined to his home except for visits to court and to see his attorney. The government appeared to agree. The court does not consider 24-hour lockdown in his home to be a viable option for Thai. He lives alone. He would not be able to be employed. Prior to the first detention hearing, he was apparently undergoing therapy for long stretches of time every week outside his home, and he would not be able to continue this regimen if he was confined in his home. The court considers it to be mandatory that, given the type of conduct alleged here and the particular type of therapy in which Thai already was engaged, he receive individual counseling, and he could not do that if he was incarcerated in his home. Further, given the factors cited above, Thai does pose a serious risk of flight, and his spending a long period of time, perhaps years, locked in his home would only increase that risk.

In short, the information in probation's memorandum, and the arguments at the second hearing from the parties, tipped what was already a very close case toward detention. The court finds that Thai overcame the presumption of detention by producing "some evidence" that he is not a danger to the community or a flight risk. The court finds, however, on balance, that there is clear and convincing evidence that Thai does pose a risk of danger to the community if released, and by a preponderance of the evidence that he poses a serious risk of flight. The court finds that there is no combination of factors that can serve as a reasonable guard to mitigate these risks, considering the facts of this case. Therefore, the court orders that Thai be detained.

ORDER OF DETENTION PENDING TRIAL

In accordance with the foregoing memorandum, IT IS ORDERED:

1. That defendant be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That he be afforded a reasonable opportunity for private consultation with counsel; and

3. That on order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which he is detained and confined shall deliver him to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/ M. Page Kelley
M. PAGE KELLEY
United States Magistrate Judge

March 23, 2019

13